UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HAKIM EDWARDS,

                Petitioner,

-against-

MICHAEL CAPRA,

                Respondent.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-4654 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Petitioner Hakim Edwards' pro se Petition for a Writ of Habeas Corpus (the "Petition") under 28 U.S.C. § 2254. (Pet. (Dkt. 1).) Petitioner asserts multiple challenges to his 2007 state conviction for criminal possession of a weapon. (Id.) For the reasons set forth below, the Petition is DISMISSED.

## I. BACKGROUND

### A. Facts Underlying Arrest[1]

On December 11, 2005, Police Officer Miguel Marte was on patrol with three other police officers (collectively, the "Arresting Officers") in Brooklyn, NY. (Pet'r's Br. on Appeal (Resp't's Resp. to Order to Show Cause ("State's Resp.")) (Dkt. 12) Ex. B) at 4.) The Arresting Officers pulled over a livery cab that was driving at a "high rate of speed," which Officer Marte estimated at "approximately . . . 35 or 45 miles per hour." (Id.) As Officer Marte approached the vehicle, he observed Petitioner sitting "partially bent" in rear passenger seat, then sliding over to the driver's side. (Id.) Petitioner "tried to kick something on the ground of the vehicle,"

---

[1] Except as otherwise indicated, these facts are drawn from Petitioner's account of the evidence presented at trial, as described in his brief on direct appeal. Citations to the trial and hearing transcripts are omitted throughout this section.

1

then exited the vehicle. (Id.) Officer Marte "[shone] his flashlight into the backseat of the car and observed a silver firearm on the floor of the passenger's side, which another officer recovered." (Id. at 4-5.) The firearm was a loaded .357 Magnum revolver. (Aff. in Opp'n to Pet. ("Oziemblewski Aff.") (contained in State's Resp.) ¶ 5.) Petitioner was arrested and indicted for criminal possession of a weapon in the third and fourth degrees. (Pet'r's Br. on Appeal at 3; see also Oziemblewski Aff. at ¶ 7.)

**B. Criminal Trial Proceedings**

Before the trial began, defense counsel moved to suppress certain evidence. (See Oziemblewski Aff. ¶ 8.) Defense counsel argued that the police stop was unlawful, and that the court should therefore suppress the evidence flowing therefrom, including the firearm collected from the livery cab, as well as certain statements made by Petitioner to the Arresting Officers regarding firearm ownership. (Id. ¶¶ 6, 8.) The New York State Supreme Court, Kings County (the "State Trial Court") held a suppression hearing and denied the motion. (Id. ¶ 8; see also Suppression Hg. Tr. (contained in State's Resp. Ex. A) at 55-61.)

Following a jury trial, Petitioner was convicted on March 13, 2007, of Criminal Possession of a Weapon in the Third Degree under N.Y. Penal Law § 265.02. (Oziemblewski Aff. ¶ 10; see also Trial Tr. (contained in State's Resp. Ex. A) at 611-12.) Because Petitioner had two prior "violent felony" convictions, the State Trial Court adjudicated Petitioner to be a "persistent violent felony offender" under New York law.[2] (Sentencing Tr. (contained in State's

---

[2] A "persistent violent felony offender" is a person who stands convicted of an enumerated "violent felony offense" under New York State law "after having previously been subjected to two or more predicate violent felony convictions." N.Y. Penal Law § 70.08(1). Persistent violent felony offenders are subject to a statutory sentencing range with a maximum of term of life imprisonment and a minimum term that varies based on the underlying offenses. See id. §§ 70.08(2)-(3).

2

Resp. Ex. A) at 39.) Pursuant to that designation, the court sentenced Petitioner to a prison term of fifteen years to life. (Id. at 43).

## C. Direct Appeal

In April 2009, Petitioner appealed his judgment of conviction to the New York Supreme Court Appellate Division, Second Department (the "State Appellate Court"). (Oziemblewski Aff. ¶ 13.) Petitioner filed two briefs through counsel and an additional brief pro se. (See id. ¶¶ 13-17.) Collectively, these briefs raised the following six arguments:

> (1) The officer's testimony that a car was driving at a "high rate of speed," without any evidence supporting his claim or establishing the relevant speed limit, was insufficient to establish probable cause to stop the car;
>
> (2) The alleged hearsay testimony that the cab driver did not have a "discussion" with the previous passengers regarding a gun in the backseat deprived [Petitioner] of his due process right to a fair trial, since, according to [Petitioner], it was the only evidence that the gun was not in the cab before defendant entered[;]
>
> (3) The State [deprived Petitioner] of his right to due process by its late disclosure of the cab driver's identity and statements[, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and People v. Rosario, 9 N.Y.2d 286 (1961)];
>
> (4) [Petitioner] was deprived of the right to present a defense at the pre-trial suppression hearing because his attorney failed to request an adjournment to obtain the presence of the cab driver and the arresting police officers at the hearing, thereby exonerating the State of its burden at the suppression hearing[;]
>
> (5) [Petitioner's] prior violent felony conviction was obtained in violation of [Petitioner's] constitutional rights and [was] improperly used in adjudicating him a persistent violent felony offender in the instant case[; and]
>
> (6) [Petitioner's] sentencing as a persistent violent felony offender violated his constitutional rights to due process and a jury trial, . . . because it relied on facts not found by a jury.

3

(Id. (other alterations, omissions, and footnotes omitted)[3]; see also Pet'r's Br. on Appeal (arguments (1) and (2)); Pet'r's Pro Se Suppl. Br. on Appeal (State's Resp. Ex. D) (arguments (3) to (5)); Pet'r's Suppl. Br. on Appeal (State's Resp. Ex. F) (argument (6)).)

On March 15, 2011, the State Appellate Court affirmed Petitioner's judgment of conviction, rejecting all six of Petitioner's arguments.[4] See People v. Edwards, 920 N.Y.S.2d 96 (2011) ("Edwards I"). Defendant applied for leave to appeal to the New York Court of Appeals, seeking review of all six arguments made on appeal to the Appellate Division. (Oziemblewski Aff. ¶ 20.) On June 9, 2011, Petitioner was denied leave to appeal. People v. Edwards, 952 N.E.2d 1097 (2011) ("Edwards II"). Defendant remains "incarcerated at the Sing Sing Correctional Facility pursuant to the judgment of conviction." (Oziemblewski Aff. ¶ 12.)

### D. State Habeas Petition

On September 8, 2011, Petitioner submitted the Petition under 28 U.S.C. § 2254, asserting the same six arguments as on direct appeal. (See Pet.) The State of New York ("the State"), on behalf of Respondent Michael Capra, submitted its opposition to the Petition on February 19, 2013. (See State's Resp.) The State argues that the Petition should be dismissed as untimely or, in the alternative, denied as to all six claims. (Oziemblewski Aff. ¶ 25.) Petitioner did not reply to the State's Response, and the time to do so has now passed. (See Order to Show Cause (Dkt. 4) (directing that Petitioner's reply, if any, must be filed "within 21 days of the date of receipt by him of a copy of the [State's response]").)

---

[3] The arguments have been reordered and renumbered to reflect the order in which they will be addressed in this opinion.

[4] The State Appellate Court opinion discussed and rejected Petitioner's arguments as to probable cause (argument (1)), hearsay (argument (2)), and the constitutionality of the persistent violent felony offender statute (argument (6)), and concluded by saying that Petitioner's "remaining contentions, including those raised in his pro se supplemental brief, are without merit." Edwards I, 920 N.Y.S.2d at 96-97.

## II. DISCUSSION

The court finds that the Petition is untimely and should be dismissed on that ground alone. Even if the Petition had been timely brought, however, it would be denied because each of Petitioner's six claims is either procedurally barred or substantively without merit.

### A. Timeliness of the Petition

#### 1. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[5] imposes a one-year statute of limitations on state prisoners seeking habeas corpus relief in federal court. 28 U.S.C. § 2244(d). Petitioner's one-year filing period began on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2254(d)(1)(A).[6] In New York, a state judgment becomes "final" after two events have occurred: (1) "the completion of direct appellate review in the state court system"; and (2) "either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—[after] the [90-day period] to seek direct review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001); see also Sup. Ct. R. 13(1) (allowing 90 days from the conclusion of final state court review to petition for a writ of certiorari).

---

[5] Pub. L. No. 104 132, 110 Stat. 1214 (1996).

[6] There are three other potential "triggering events" for the statute of limitations, none of which apply in this case:
   (1) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
   (2) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (3) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2254(d)(1)(B)-(D). Also not relevant is the provision for tolling the deadline during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment." Id. § 2254(d)(2).

"A petitioner may secure equitable tolling of the limitations period in certain 'rare and exceptional circumstance[s].'" Martinez v. Superintendent of E. Corr. Facility, 806 F.3d 27, 31 (2d Cir. 2015), as corrected (Nov. 12, 2015) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)). Specifically, "[t]he petitioner must establish that (a) 'extraordinary circumstances' prevented him from filing a timely petition, and (b) he acted with 'reasonable diligence' during the period for which he now seeks tolling." Id. (quoting Smith, 208 F.3d at 17); see also Holland v. Florida, 560 U.S. 631, 649 (2010).

2. Application

The New York Court of Appeals denied Petitioner's request for leave to appeal on June 9, 2011. See Edwards II, 952 N.E.2d 1097. Consequently, Petitioner's conviction became "final" under AEDPA on September 7, 2011, after the expiration of the 90-day period to seek Supreme Court review. Petitioner's one-year statute of limitations thus expired on September 7, 2012. The Petition was submitted one day later, on September 8, 2012.[7]

Petitioner has not requested equitable tolling, nor has he pled facts that show extraordinary circumstances or due diligence. "Generally, a litigant seeking equitable tolling bears the burden of establishing [these] two elements." Mottahedeh v. United States, 794 F.3d 347, 352 (2d Cir. 2015) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The court thus has no basis upon which to toll the statute of limitations, even for such a small deviation. See Walker v. Graham, 955 F. Supp. 2d 92, 105 (E.D.N.Y. 2013) ("Courts have declined to equitably toll the limitation period for petitions filed untimely by even one day.");

---

[7] The Petition was not received by the court until September 13, 2012. (See Pet. at 1.) Under the "prison mailbox rule," however, "a pro se prisoner's habeas petition is deemed filed at the moment he gives it to prison officials" rather than the date the petition is received by the court. Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (citation omitted). Petitioner does not specify the date on which he gave the Petition to a prison official. His signature on the Petition, however, is dated September 8, 2012, and so the court finds that date to be the earliest possible date on which Petitioner could have submitted the Petition.

6

cf. Day v. McDonough, 547 U.S. 198, 205-06 (2006) ("The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." (quoting Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000)).

The court finds that the Petition is time-barred and must therefore be dismissed. As the following sections explain, however, the Petition would not survive review on the merits even if it had been timely submitted.

### B. Standards for State Habeas Review

A district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in [state custody] only on the ground that he is in custody in violation of the Constitution" or other federal law. 28 U.S.C. § 2254(a). A state habeas petitioner must generally meet three requirements to obtain relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of AEDPA's deferential standard of review.

#### 1. Exhaustion

A state habeas petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." Id. § 2254(b)(1). To satisfy that requirement, "the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Rush v. Lempke, 500 F. App'x 12, 14 (2d Cir. 2012) (citation omitted).

#### 2. Procedural Default

"A federal habeas court . . . may not review a related state court decision if that decision rests on a state law ground that is 'independent of the federal question and adequate to support the judgment.'" Fulton v. Graham, 802 F.3d 257, 262 (2d Cir. 2015) (quoting Cone v. Bell,

7

556 U.S. 449, 465 (2009)). "This prudential rule applies 'whether the state law ground is substantive or procedural.'" Id. (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). Additional procedural bars attach to particular types of substantive claims, as discussed below.

### 3. AEDPA Deference

If a state court reached the merits of a federal claim asserted in a § 2254 habeas petition, a federal court reviews the state court's decision under the deferential standard set forth in AEDPA. Habeas relief may only be granted if the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the first prong, the words "clearly established federal law" refer to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). The central question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) (internal quotation marks, alterations, and emphases omitted). A federal court should not displace a state court's ruling on the merits so long as "fairminded jurists could disagree on the correctness of the state court's decision." Woods v. Etherton, — U.S. —, 136 S. Ct. 1149, 1151 (2016) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

With regard to the second AEDPA prong, "a federal court is required to presume that a state court's factual findings are correct and to place on the petitioner the burden of rebutting this

8

presumption by clear and convincing evidence." Fulton, 802 F.3d at 262 (citing 28 U.S.C. § 2254(e)(1)).

### C. Review of Petitioner's Habeas Claims

The Petition asserts the same six arguments that the State Appellate Court considered on direct review, and upon which Petitioner sought leave to appeal to the New York Court of Appeals. See supra Sections I.C-D. The court therefore finds that Petitioner has satisfied the exhaustion requirement with regard to all six claims. See 28 U.S.C. § 2254(b)(1). The court finds, however, that each claim fails under either a procedural bar or AEDPA's deference standard.

#### 1. Lack of Probable Cause

Petitioner claims that the Arresting Officers lacked probable cause to stop the livery cab, and that the State Trial Court should therefore have suppressed the resulting evidence (i.e., the recovered gun and Petitioner's statements to the Arresting Officers). (Pet. at 5.) Petitioner argues that Officer Marte's testimony about the cab's "high rate of speed" was unsupported by any evidence "that he had any experience estimating the speed of vehicles," and also that there was no testimony as to "the applicable speed limit in the area" where the cab was stopped. (Id.) Petitioner cites to the Sixth and Fourteenth Amendments of the United States Constitution (see id.), but this argument is properly characterized as arising under the Fourth Amendment, which protects individuals "against unreasonable search and seizures" except "upon probable cause," U.S. Const. amend. IV.[8] Because this claim has already been fully adjudicated by the State Appellate Court, it is procedurally barred from habeas review in this court.

---

[8] The court is cognizant of its obligation to "construe the submissions of a pro se litigant liberally and interpret them 'to raise the strongest arguments that they suggest.'" Keeling v. Hars, 809 F.3d 43, 47 n.2 (2d Cir. 2015) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

9

### a. *Legal Standard*

"As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a [Section 2254 petition] unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court." Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002) (citing Stone v. Powell, 428 U.S. 465, 481-82 (1976); other citations omitted). There are two circumstances when a federal court may find that a petitioner has not received a "full and fair opportunity to litigate": (1) "If the state provides no corrective procedures at all to redress Fourth Amendment violations"; and (2) if the state provides such procedures, but "the defendant is precluded from utilizing [them] by reason of an unconscionable breakdown in that process." Singh v. Miller, 104 F. App'x 770, 772 (2d Cir. 2004) (quoting Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)).

### b. *Application*

Petitioner's Fourth Amendment argument was rejected at a pre-trial suppression hearing and again on direct appeal. Edwards I, 920 N.Y.S.2d at 96 ("The suppression court correctly determined that the police had probable cause to stop the livery cab in question."). (See also Suppression Hg. Tr. at 56.) "Even if [Petitioner] were correct in his allegation that the [State Appellate Court] erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result." Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992). Petitioner has not alleged, nor can he show, that he qualifies for either of the exceptions based on a lack of "full and fair opportunity to litigate."

With regard to the first exception, New York provides corrective procedures for alleged Fourth Amendment violations in Article 710 of the New York Criminal Procedure Law. "[F]ederal courts have approved [this] procedure . . . as being facially adequate." Id. at 70 n.1.

10

The second exception is likewise inapplicable. "The record reveals that at every stage of the state proceedings, [Petitioner] was afforded an ample opportunity to vindicate his Fourth Amendment rights," which is a clear sign "that no 'unconscionable breakdown' occurred." Singh, 104 F. App'x at 772.

Because Petitioner had a "full and fair opportunity to litigate" his Fourth Amendment claim in the state courts, the court denies this claim as procedurally barred.

### 2. Hearsay

Petitioner next contends that the State Trial Court impermissibly admitted hearsay evidence in violation of his "due process right to a fair trial." (Pet. at 5-6.) Due to the absence of "direct evidence that petitioner physically possessed the gun," the State relied on a theory of constructive possession based on a showing that Petitioner "'controll[ed]' the area from which [the gun] was recovered." (Id. at 5.) To that end, the cab driver testified "that he did not have a 'discussion' with [any of] the previous passengers regarding a gun in the car." (Id. at 6.) Petitioner argues that the "passenger compartment of a livery cab [is] an inherently public space in which passengers frequently [leave] personal items," and that the driver's "damaging testimony" deprived him of a fair trial. (Id.)

#### a. Legal Standard

A federal habeas court may not review "a state court's evidentiary rulings," even if the rulings were "erroneous under state law," unless "the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings." McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 72-73 (2d Cir. 2011) (internal footnote and citations omitted). Fundamental unfairness occurs when "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have

existed on the record without it." Id. at 73 (alterations omitted) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)).

### b. *Application*

On direct appeal, the State Appellate Court held that the driver's testimony "did not constitute hearsay" and was therefore properly admitted. See Edwards I, 920 N.Y.S.2d at 96. Even if that conclusion were incorrect, this court is procedurally barred from disturbing it because Petitioner has failed to show that the admitted testimony resulted in fundamental unfairness for two reasons. First, when defense counsel objected to the driver's testimony at trial, the State Trial Court responded by instructing the jury that the driver's statements were admitted "to reveal information that [the driver] did or did not have," which shed light on his "state of mind at that time." (Trial Tr. at 316.) Defense counsel then had the opportunity to cross-examine the driver, and specifically elicited testimony as to the number of passengers the driver had picked up on the night of Petitioner's arrest, as well as the frequency with which the driver found left-behind items in the back seat. (See id. at 335-37.) Second, the State's case did not rest solely on the challenged statements. The State also elicited testimony as to Petitioner's movements within the car as the Arresting Officers approached, as well as to the low likelihood of failing to notice a large gun lying on the floor of a small backseat area. (Mem. of Law ("State's Mem.") (contained in State's Resp.) at 23-24.)

For these reasons, the court finds that the admission of the driver's testimony did not "affect the fundamental fairness of the proceedings" under McKinnon, 422 F. App'x at 73. Petitioner was afforded procedural fairness with a jury instruction and the opportunity for cross-examination. Moreover, the court finds that the driver's testimony about prior conversations was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that

12

would have existed on the record without it." Id. (quoting Collins, 755 F.2d at 19). Therefore, Petitioner's claim is denied as procedurally barred.

### 3. Brady/Rosario Violation

Petitioner alleges that the State impermissibly withheld from defense counsel the name of the cab driver, as well as certain statements the driver made during an interview with the police. (Pet. at 7-8.) Petitioner argues that the withheld evidence prejudiced his defense in violation of Brady v. Maryland, 373 U.S. 83 (1963), as well as a related state-law doctrine under People v. Rosario, 9 N.Y.2d 286 (1961). (Id.) As a preliminary matter, a federal habeas court may not adjudicate an alleged Rosario violation because the obligation to turn over Rosario material arises entirely under state law. See 28 U.S.C. § 2254(a) (providing for federal habeas relief based on violations of federal law); see also, e.g., Kotler v. Woods, 620 F. Supp. 2d 366, 395 (E.D.N.Y. 2009) ("[T]o the extent that [a state habeas] claim is based on a Rosario violation, it must fail."). The court thus turns to the alleged violation of the federal Brady doctrine, which offers appropriate subject matter for federal habeas review.

#### a. Legal Standard

Because this claim was "adjudicated on the merits" in the State Appellate Court,[9] habeas relief is only available if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). AEDPA establishes a "highly deferential standard for evaluating state court rulings . . . which demands that state court

---

[9] Petitioner raised an identical Brady argument on direct appeal. (See Pet'r's Pro Se Suppl. Br. on Appeal at 13-18.) The State Appellate Court's opinion did not discuss Petitioner's Brady argument in detail, but specifically stated that all arguments not fully discussed in the opinion were found to be "without merit." Edwards II, 920 N.Y.S.2d at 97. The Second Circuit has held that such statements are sufficient to constitute "adjudication on the merits" for the purposes of AEDPA deference. See Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) ("[A]n unexplained ruling on the merits is also entitled to AEDPA deference." (citations omitted)).

decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (internal quotation marks and citations omitted).

"To establish a Brady violation" under applicable Supreme Court precedent, "a defendant must show that (1) the evidence at issue is favorable to him because it is either exculpatory or impeaching, (2) the government suppressed that evidence, and (3) [the defendant] was thereby prejudiced." United States v. Fernandez, 648 F. App'x 56, 61 (2d Cir. 2016) (summary order) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

*b. Application*

Petitioner has failed to show that the state courts unreasonably applied the Brady doctrine. With regard to the first prong, the cab driver was not an exculpatory witness because his testimony was consistent with the State's affirmative case. (See State's Mem. at 34-35 (describing the trial record).) Likewise, Petitioner has not identified any allegedly suppressed evidence that would have supported impeachment.

The court need not analyze the second prong because, even if Petitioner were able to show that the State impermissibly suppressed evidence, Petitioner has failed to show prejudice. Petitioner bears the burden of establishing "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Fuentes v. T. Griffin, 829 F.3d 233, 246 (2d Cir. 2016) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). To that end, Petitioner alleges that "the outcome of [the suppression] hearing would have been different" had defense counsel been able to offer the cab driver's testimony as to Petitioner's identity, namely "that he did not know" Petitioner, and that he could offer only a "vague" description of the passenger in his cab on the night in question. (Pet. at 8.) Defense counsel elicited precisely such testimony during his cross-examination at trial, however, where it was far more relevant. (Trial Tr. at 337-38.) There is thus no basis for suspecting that the

alleged suppression of evidence affected the outcome of the suppression hearing, much less the ultimate outcome of the trial.

Moreover, when defense counsel raised the alleged Brady suppression at trial, the State Trial Court responded by altering the trial schedule, allowing additional time before cross-examination for defense counsel to speak with the cab driver. (See id. at 129-33.) "'[A]s long as a defendant possesses Brady evidence in time for its effective use,' there can be no Brady violation." United States v. Halloran, 821 F.3d 321, 341 (2d Cir. 2016) (quoting United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001)).

The court finds that the state courts did not unreasonably apply clearly established federal law when they denied Petitioner's Brady claim. This habeas claim is therefore denied.

### 4. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel on the basis that defense counsel declined to call any witnesses at the suppression hearing. (Pet. at 9-10.)

*a. Legal Standard*

This claim, like Petitioner's Brady claim, was adjudicated on the merits in the State Appellate Court. Edwards I, 920 N.Y.S.2d at 97. Petitioner therefore bears the burden of showing that the state court unreasonably applied clear Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). The Court has explained that "[c]ounsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial." Maryland v. Kulbicki, —— U.S. ——, 136 S. Ct. 2, 3 (2015) (emphasis omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). "At the first step, courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Lugo v. LaValley, 601 F. App'x 46, 48 (2d Cir. 2015) (summary order) (quoting

15

Strickland, 466 U.S. at 689). "At the second step, the inquiry is not whether counsel's error had 'some conceivable effect on the outcome of the proceeding,' but whether it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Id. (quoting Strickland, 466 U.S. at 686).

### b. Application

Petitioner has not met the Strickland standard. His claim of ineffective counsel is structurally identical to his Brady claim: Petitioner points to testimony that emerged at trial and speculates that it would have made a material difference if that same testimony had been presented earlier, at the suppression hearing. (Pet. at 9-10.) Specifically, Petitioner contends that defense counsel should have requested an adjournment of the suppression hearing in order to produce testimony from the cab driver as to the identity of the passenger in the cab, and also testimony from the Arresting Officers as to certain discrepancies in their accounts of the arrest. (Id. at 10.) "Petitioner believes that had the hearing judge been able to hear these facts, the case would have been dismissed." (Id.) Such speculation does not approach the standard necessary to establish unconstitutionality, however. The testimony in question was more relevant for the ultimate question of guilt at trial than for the constitutional and evidentiary questions in the suppression hearing, to which defense counsel mounted a vigorous opposition. (See Suppression Hg. Tr. at 44-51.) Petitioner has not shown that counsel was so defective as to deprive him of a fair trial, and is therefore not entitled to relief on this claim. The claim is denied.

### 5. Challenges to the "Persistent Violent Felony Offender" Designation

Petitioner brings two separate challenges to his designation as a "persistent violent felony offender" (the "Designation") under New York State law for the purposes of sentencing. See N.Y. Penal Law § 70.08. Both claims are procedurally barred, and must therefore be denied.

### a. Prior Unconstitutional Conviction

The Designation was based on Petitioner's prior convictions in 1994 and 1996. (Sentencing Tr. at 28-29.) Petitioner claims that the Designation was improper because he pleaded guilty in 1994 under the belief that his conviction would be considered a non-violent felony. (Pet. at 9.) Nonetheless, in the 1996 proceedings, the state court determined that the 1994 conviction constituted a violent felony; the State argues that this "adjudication was binding in any future proceeding." (State's Mem. at 38-39 (citing N.Y. Crim. Proc. Law § 400.15(8)).) Petitioner responds that a plea is only valid if the defendant knowingly and voluntarily accepts, and so "[i]f a person is not told they are pleading to a violent felony," then the felony should be deemed nonviolent. (Pet. at 9.)

Petitioner's argument was rejected in both the State Trial Court and the State Appellate Court. Petitioner does not appear to directly challenge the constitutionality of those decisions, but rather contends that this court should reach past them to correct the alleged constitutional violation that occurred two decades ago, when the 1996 court designated his prior conviction as a "violent felony." This claim for collateral relief is clearly prohibited as both untimely and non-exhausted under the standards outlined above in Sections II.A and B.

In the alternative, it is possible to read Petitioner as challenging the state courts' application of the "violent felon" designation procedures in Article 470 of New York's Criminal Procedure Law. Any such a claim would fail on grounds of procedural default. The Supreme Court has clearly stated that "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

For these reasons, the court has no authority to consider Petitioner's claims as to the propriety of relying on the 1994 conviction in his designation as a persistent violent felony offender. The claim is denied.

### b. *Sentencing Based on Facts Not Found by a Jury*

In Petitioner's final claim, he attacks the constitutionality of the New York "violent felony offender" statute itself. The statute instructs courts to determine "persistent violent felony offender" status based on the existence, timing, and nature of an individual's prior convictions. See N.Y. Penal Law § 70.08. Petitioner contends that these are questions of fact, and so must be submitted to a jury pursuant to the "jury clauses of the Federal and state constitutions." (Pet. at 6-7.) With regard to the claim under the New York State Constitution, the court is precluded from considering a state-law challenge on collateral review, as explained in the prior section. See McGuire, 502 U.S. at 67-68.

With regard to the federal constitutional challenge, the claim is procedurally barred in light of the holding on direct appeal that Petitioner's "constitutional challenge to the persistent violent felony offender statute is unpreserved for appellate review." Edwards I, 920 N.Y.S.2d at 97 (citing N.Y. Crim. Proc. Law § 470.05(2)). It is immaterial that the State Appellate Court offered an alternative holding rejecting the merits of Petitioner's constitutional challenge. "Federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Rodriguez v. Schriver, 392 F.3d 505, 512 (2d Cir. 2004) (alteration omitted) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)). Therefore, this claim is denied as procedurally barred.

## III. CONCLUSION

For the reasons stated above, the Petition is DISMISSED. No Certificate of Appealability shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required under 28 U.S.C. § 2253(c)(2).

SO ORDERED.

Dated: Brooklyn, New York
October 4, 2016

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge